**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **C. DAX FARMER**<br>c/o Goldenberg Schneider, LPA<br>One West 4th Street, 18th Floor<br>Cincinnati, OH 45202<br><br>individually, and on behalf of all those similarly situated,<br><br>          **Plaintiff,**<br><br>  **vs.**<br><br>**VOLKSWAGEN GROUP OF AMERICA, INC.**<br>c/o Corporation Service Company<br>Bank of America Center<br>1111 East Main Street<br>Richmond, VA 23219<br><br><br>          **Defendant.** | **Case No. 1:15-cv-615**<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**(WITH JURY DEMAND)** |

Plaintiff C. Dax Farmer ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Volkswagen Group of America, Inc. All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1.     On September 18, 2015, the United States Environmental Protection Agency ("EPA") issued a Notice of Violation ("NOV") of the Clean Air Act to Volkswagen Group of

{00036161; 1}

America, Inc. ("Volkswagen").  According to the notice, certain four-cylinder Volkswagen and Audi diesel cars from model years 2009-2015 surreptitiously include software designed to circumvent EPA emissions standards for air pollutants.   The sophisticated software algorithm detects when the car is undergoing official emissions testing, and turns full emissions controls on only during the test.  This results in cars that appear to satisfy emissions standards in the laboratory setting, but that emit up to 40 times the acceptable levels of nitrogen oxides ("NOx") during normal operation.  The software is an illegal "defeat device," as the term is defined by the Clean Air Act.

2.      Plaintiff has purchased three different Volkswagen vehicles equipped with four-cylinder diesel engines.  Most recently, Plaintiff purchased a 2015 Volkswagen Golf SportWagen TDI Clean Diesel in the summer of 2015 for $31,445.  Plaintiff purchased the Volkswagen vehicles based on Volkswagen's representations and advertisements that it contained "Clean Diesel" technology.  As Volkswagen's website touted: "This ain't your daddy's diesel.  Stinky, smoky, and sluggish.  Those old diesel realities no longer apply.  Enter TDI Clean Diesel.  Ultra-low-sulfur fuel, direct injection technology, and extreme efficiency.  We've ushered in a new era of diesel."

3.      Volkswagen charged Plaintiff and other "Clean Diesel" buyers a substantial premium over vehicles featuring comparable gasoline powered engines.  These premiums range from roughly $2,800 to $6,900 over the gasoline counterparts.

4.      Yet Plaintiff, like many other purchases of Volkswagen Clean Diesel vehicles, purchased his vehicles believing he was doing his part to improve the environment and reduce his carbon footprint.  Unlike other "extreme[ly] efficient[]" hybrid vehicles, Plaintiff was attracted to Volkswagen's "Clean Diesel" vehicles because they were fun to drive yet still

achieved excellent mileage. It was this particular combination of fuel efficiency, cleanliness, and performance that Plaintiff thought he was buying.

5. Unbeknownst to Plaintiff, the vehicles he purchased were surreptitiously equipped with the "defeat device." Had Volkswagen informed Plaintiff that the supposed "Clean Diesel" engines emitted pollutants exceeding 40 times the legal limit, he would not have purchased the vehicle or would have paid less for it.

6. Plaintiff brings this proposed class action for damages on behalf of himself and all other persons and entities nationwide who purchased or leased one or more of the approximate 482,000 diesel passenger cars manufactured by Volkswagen equipped with a "Clean Diesel" engine containing the defeat device. These include, but are not limited to, 2009-2015 Volkswagen Jetta; 2009-2015 Volkswagen Beetle; 2009-2015 Volkswagen Golf; 2014-2015 Volkswagen Passat; and 2009-2015 Audi A3 (collectively, the "Affected Vehicles").

7. Plaintiff and members of the class all suffered damages as a result of Volkswagen's misrepresentations and omissions regarding the "Clean Diesel" engine. Plaintiff and class members overpaid to purchase vehicles incapable of providing the balance of performance, efficiency, and cleanliness that Volkswagen represented them to offer. Plaintiff and the class members have also suffered diminution of vehicle value now that the existence of the defeat devices has been revealed publically. In addition, the EPA has indicated its intention to force Volkswagen to bring the Affected Vehicles into compliance with the emissions laws, which will negatively affect the efficiency and/or performance of the vehicles owned by Plaintiff and the class members and further diminish the value of the Affected Vehicles. Accordingly, Plaintiff and similarly situated owners of the Affected Vehicles are entitled to compensation for their losses.

## JURISDICTION & VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiff and certain members of the Class are citizens of states different from that of Volkswagen.

9.      The Court has personal jurisdiction over Volkswagen because the alleged wrongdoing occurred in Ohio and because Volkswagen has sufficient minimum contacts with Ohio and has otherwise intentionally availed itself of the markets in Ohio.

10.      Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1391 (b)-(c) and 1441(a), because Volkswagen is a corporate entity that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Volkswagen's contacts with this District are sufficient to subject it to personal jurisdiction.  Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

11.      Plaintiff C. Dax Farmer is an Ohio citizen residing in Hamilton County.

12.      Volkswagen Group of America, Inc. is a New Jersey Corporation with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under Volkswagen and Audi brand names.

## FACTUAL ALLEGATIONS

4

13. The Clean Air Act requires vehicle manufacturers to certify to the EPA that their products satisfy applicable federal emissions standards to control air pollution. The Clean Air Act aims to protect human health and the environment by reducing emissions of NOx and other pollutants from mobile sources of air pollution. NOx are a family of highly reactive gases that play a major role in atmospheric reactions with volatile organic compounds that produce ozone (smog) on hot summer days. Breathing ozone has also been linked to a variety of health problems. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity.

14. Federal law defines a "defeat device" as an auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the [auxiliary emission control device] is justified in terms of protecting the vehicle against damage or accident; (3) The [auxiliary emission control device] does not go beyond the requirements of engine starting; or (4) The [auxiliary emission control device] applies only for emergency vehicle." 40 C.F.R. § 86.1803-01. Motor vehicles equipped with defeat devices, like the one found in the Affected Vehicles, cannot be certified.

15. In May 2014, West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study finding significantly higher in-use emissions from two Affected Vehicles. Over the course of the year following the study, Volkswagen continued to assert to the California Air Resources Board ("CARB") and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions.

16.     Volkswagen issued a voluntary recall in December 2014 ostensibly to address the issue.  However, follow-up testing of the vehicles showed only a limited benefit of the recall.

17.     CARB and the EPA informed Volkswagen that unless it could adequately explain the anomalous emissions, they would not approve certificates of conformity for Volkswagen's 2016 model year "Clean Diesel" vehicles.

18.     On September 3, 2015 – only after the EPA threatened to prevent Volkswagen from selling its 2016 model year vehicles in the United States – Volkswagen admitted that it had designed and installed a defeat device in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing.

19.     On September 18, 2015, the EPA issued a NOV of the Clean Air Act to Volkswagen for producing and selling four-cylinder diesel cars equipped with the illegal defeat device, which it described as a threat to public health.  The EPA has indicated Volkswagen will be required to implement corrective action to remedy the non-conforming Affected Vehicles.

20.     Two days later, Volkswagen's Chief Executive Martin Winterkorn issued a statement:  "I personally am deeply sorry that we have broken the trust of our customer and the public."  The statement added that Volkswagen is cooperating with authorities and has commissioned an external probe.

21.     Michael Horn, head of the Volkswagen brand in the U.S., has stated:  "Our company was dishonest with the EPA, and the California Air Resources Board and with all of you…. And in my German words:  We have totally screwed up.  We must fix the cars to prevent this from ever happening again and we have to make this right.  This kind of behavior is totally inconsistent with our qualities."

22.     Horn has also said that Volkswagen is "committed to do what must be done and to begin to restore your trust…. We will pay what we have to pay."

23.     Experts believe that Volkswagen wanted to avoid the cost of additional hardware to meet tough U.S. emission standards, and used the secret "defeat device" as a cheaper software fix.  The defeat device would also help improve the cars' fuel economy numbers, because vehicles without emission control systems have better fuel economy than those equipped with emissions control systems.

24.     The EPA has announced that it expects to compel Volkswagen to issue a recall in the future to reduce the emission impacts of the Affected Vehicles.  Owners will be notified of the recall once Volkswagen has developed a remedial plan and the EPA approves the plan. Volkswagen will be given a "reasonable amount of time" to develop a plan to complete the repairs, including both the repair procedure and manufacturer of any needed parts.  Depending on the complexity of the repairs and the lead time needed to obtain the necessary components, the EPA has estimated that it could take up to a year to identify the corrective actions, develop a recall plan, and issue recall notices.

25.     Edmunds.com, which operates an online car-buying guide, is advising owners of Affected Vehicles not to attempt to sell their vehicles, because they will likely receive less for the Affected Vehicles because many buyers will feel a moral objection to driving them until their emissions rates are reduced.

26.     However, any fix that improves the Affected Vehicles' emissions will almost certainly reduce on-the-road performance for the Affected Vehicles.  Auto analysts warn that because it may be impossible for Volkswagen to add new pollution control equipment to existing engines, Volkswagen may not be able to reduce the Affected Vehicle's emissions levels without

cutting horsepower and/or fuel economy performance – the primary selling points of the Affected Vehicles.

27.     Notably, the Volkswagen Golf has won a number of awards, including Motor Trend Car of the Year, in part because of its wide range of available engine options, including the four-cylinder diesel.

28.     Also, many states require proof that emissions recalls have been performed prior to issuing vehicle registration.  Accordingly, when Volkswagen institutes the upcoming emission recall required by the EPA, many vehicles owners will be forced to participate.

29.     Plaintiff has purchased and owned three different Affected Vehicles:  a 2009 Jetta; a 2012 Jetta; and, currently, a 2015 Golf SportWagen TDI.

30.     Plaintiff purchased his most recent Affected Vehicle, a 2015 Volkswagen Golf SportWagen TDI Clean Diesel, in the summer of 2015 for $31,445.  Plaintiff purchased the Volkswagen vehicles based on Volkswagen's representations and advertisements that they contained "Clean Diesel" technology.  None of the advertisements or representations received by Plaintiff prior to purchasing the vehicles disclosed the existence of the "defeat device," nor did they disclose that Volkswagen had falsified its certification of EPA compliance.  Had Volkswagen informed Plaintiff that the supposed "Clean Diesel" engines emitted pollutants in excess of 40 times the legal limits, he would not have purchased the vehicles or would have paid less for them.

31.     Plaintiff has suffered damages as a result of his purchases of the Affected Vehicles, including but not limited to (1) overpayment for vehicles that are incapable of performing as represented, (2) future additional fuel costs, (3) loss of performance from future repairs, and (4) diminution of vehicle value.

## **FRAUDULENT CONCEALMENT ALLEGATIONS**

32.     Because Plaintiff's claims arise from Volkswagen's fraudulent concealment of the

defeat device, there is no single interaction, document, or communication upon which Plaintiff's

claims are based.

33.     Plaintiff makes the following specific fraud allegations with as much specificity

as possible at this point in the litigation:

        a.      **Who**:  Volkswagen actively concealed the defeat device present in the

Affected Vehicles from Plaintiff and the class members when Volkswagen continued to

manufacture, distribute, sell and lease the Affected Vehicles.  Plaintiff is unaware of and

therefore cannot specifically identify the true names and identities of specific Volkswagen

officials responsible for such decisions.

        b.      **What**:  Volkswagen knew, or was reckless or negligent in not knowing,

that the Affected Vehicles contain the defeat device, as alleged herein.  Volkswagen concealed

the defeat device from Plaintiff and the class members he seeks to represent.

        c.      **When**:  Volkswagen concealed material information regarding the defeat

device in the Affected Vehicles sold and/or leased, namely that they fail to satisfy the applicable

emission laws, making them unfit for their stated purpose.  Prior to September 3, 2015,

Volkswagen had not disclosed the truth about the defeat device in Affected Vehicles to anyone

outside of Volkswagen, nor had Volkswagen taken any action to inform consumers about the

true nature of the Affected Vehicles.

        d.      **Where**:  Volkswagen concealed material information regarding the true

nature of the Affected Vehicles in connection with every sale and lease transaction involving

Affected Vehicles.  Plaintiff is aware of no communication, document, or other interaction with

anyone outside of Volkswagen before September 3, 2015 in which Volkswagen disclosed the true nature of the defeat device in each and every Affected Vehicle.  The existence of the defeat device in the Affected Vehicles was not disclosed in Volkswagen's marketing, warranties, documentation, website, or any communication with Plaintiff and vehicle owners.

       e.    **How**:  Volkswagen concealed material information regarding the defeat device at all times prior to September 3, 2015, including that the existence of the defeat device render the Affected Vehicles unfit for their stated purpose.  Volkswagen actively concealed the truth about the existence and nature of the defeat device from Plaintiff and class members, even though Volkswagen knew that information regarding the defeat device would be important to a reasonable consumer.

       f.    **Why**:  Volkswagen concealed material information about the defeat device in Affected Vehicles for the purpose of inducing Plaintiff and class members to continue to and repeatedly purchase and/or lease Affected Vehicles, rather than purchasing and/or leasing competing vehicles.  If Volkswagen had disclosed the truth about the defeat device, then Plaintiff would not have purchased the Affected Vehicles or he would have paid less.

## TOLLING OF STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

34.    Upon information and belief, prior to September 3, 2015, Volkswagen knew of the defeat device in the Affected Vehicles, but continued to distribute, sell, and/or lease the Affected Vehicles to Plaintiff and the class members.  In doing so, Volkswagen concealed from or failed to notify Plaintiff and the class members about the true nature of the Affected Vehicles.

35.    Any applicable statute of limitations has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.

**Estoppel**

36.     Volkswagen was under a continuous duty to disclose to Plaintiff and the class members the existence of the defeat device, which substantially affects the true character, quality, and nature of the Affected Vehicles.  Volkswagen actively concealed the true character, quality, and nature of the defeat device in the Affected Vehicles, and Plaintiff and the class members reasonably relied upon Volkswagen's knowing and active concealment of these facts. Volkswagen is accordingly estopped from relying on any statute of limitations in defense of this action.  For these same reasons, Volkswagen is estopped from relying upon any warranty mileage and age limitations in defense of this action.

**Discovery Rule**

37.     The claims for relief alleged herein did not accrue until Plaintiff and the class members discovered that the Affected Vehicles contained the defeat device.

38.     Plaintiffs and the class members had no realistic ability to identify the defeat device until – at the earliest – September 18, 2015 when the EPA issued its NOV.

39.     Despite their exercise of due diligence, Plaintiff and the class members were not reasonably able to discover the defeat device until after they purchased or leased the Affected Vehicles.  Accordingly, their claims for relief did not accrue until they discovered that the defeat device caused the Affected Vehicles to fail required emissions standards.

**CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this action on behalf of himself and all others similarly situated under Fed. R. Civ. P. 23(b)(2) and (b)(3).

41.     Subject to confirmation, clarification, and/or modification based on discovery to be conducted in this action, Plaintiff seeks to represent a nationwide class (the "Nationwide Class") defined as follows:

> All persons or entitles in the United States who are current or former owners and/or lessees of an Affected Vehicle. [1]

42.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff also seeks to represent an Ohio subclass ("Ohio Subclass") defined as follows:

> All persons or entitles in the state of Ohio who are current or former owners and/or lessees of an Affected Vehicle [2]

43.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and/or the members of the Ohio Subclass, including Plaintiff.

44.     Plaintiff seeks only damages and injunctive relief on behalf of himself and the Class Members.  Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries suffered by Plaintiff and/or the Class Members.

45.     While the exact number of Class Members is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Nationwide Class and/or Ohio Subclass is ascertainable based upon, *inter alia*, the records maintained by Volkswagen. Upon information and belief, Volkswagen sold and/or leased approximately 500,000 Affected Vehicles.  Moreover, upon information and belief, Volkswagen sold at least hundreds of

---

[1] Excluded from the Class are (1) Volkswagen and any entity in which Volkswagen has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

[2] Excluded from the Subclass are (1) Volkswagen and any entity in which Volkswagen has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

Affected Vehicles in the state of Ohio. Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

46. Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and final injunctive relief is appropriate respecting the Class as a whole because Volkswagen have acted or refused to act on grounds that generally apply to the Class, within the meaning of Fed. R. Civ. P. 23(b)(2). These common legal and factual questions include:

a. whether Volkswagen designed, marketed, distributed, leased, and/or sold the Affected Vehicles in the United States and Ohio;

b. whether the Affected Vehicles that Volkswagen designed, marketed, distributed, leased, and/or sold contained a defeat device;

c. whether the Affected Vehicles that Volkswagen designed, marketed, distributed, leased, and/or sold comply with federal emissions laws;

d. whether Volkswagen knew of the defeat device at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

e. whether Volkswagen knew that Affected Vehicles failed to comply with federal emissions laws at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

f. whether the Affected Vehicles that Volkswagen designed, marketed, distributed, leased, and/or sold can be made to comply with federal emissions laws without substantially degrading the performance and/or efficiency of the Affected Vehicles;

g. whether Volkswagen breached a contract with Plaintiff and the Class Members;

13

h.  whether Volkswagen's actions violate Ohio consumer protection laws;

i.  whether Plaintiff and the Class Members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages; and

j.  whether Plaintiff and the Class Members are entitled to injunctive relief.

47.  Plaintiff's claims are typical of the claims of the Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class Member purchased an Affected Vehicle.

48.  Plaintiff will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff's interests do not conflict with the interests of the Class Members.  Further, Plaintiff has retained counsel competent and experienced in complex class action litigation, including vehicle defect litigation, and Plaintiff intends to prosecute this action vigorously.  Therefore, the interests of the Class Members will be fairly and adequately protected.

49.  A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members. Also, a class action is superior to all other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as Volkswagen.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.

The Class is ascertainable and the same common documents and testimony will be used to prove Plaintiff's claims as well as the claims of the Class Members.  Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

50.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Volkswagen has acted or refused to act on grounds that apply generally to the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## FIRST CLAIM FOR RELIEF

### Fraudulent Concealment

### (Asserted on behalf of Nationwide Class)

51.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

52.     Volkswagen intentionally concealed material facts concerning the quality of the Affected Vehicles.  Volkswagen used a secret defeat device to evade federal emissions laws while at the same time marketing the Affected Vehicles as "Clean Diesel."  As a result of Volkswagen's wrongful actions, roughly 500,000 Affected Vehicles on U.S. roads have been emitting wrongful pollutants at up to 40 times the applicable standards.

53.     Plaintiff and the Class Members reasonably relied on Volkswagen's false representations and omissions.

54.     Volkswagen concealed and suppressed material facts concerning Affected Vehicles true nature.

55.     Volkswagen had a duty to disclose its scheme to evade federal emissions laws because Volkswagen had exclusive knowledge of the scheme, and because Volkswagen knew that the facts were not accessible or reasonably discoverable by Plaintiff or the Class Members.

56.     Volkswagen also had a duty to disclose because its representations that the Affected Vehicles contained "Clean Diesel" engines were misleading, deceptive, and incomplete without the disclosure of the additional facts regarding the defeat device and Volkswagen's emissions law evasion scheme.  Having volunteered to provide information to Plaintiff and Class Members, Volkswagen had a duty to disclose all relevant facts about the Affected Vehicles' emissions status.

57.     The omitted and concealed facts were material because they impact the legality and resale values of the Affected Vehicles.

58.     Upon information and belief, Volkswagen still has not made full and adequate disclosures, and continues to defraud Plaintiff and the Class Members by concealing material information regarding the emissions qualities of the Affected Vehicles.

59.     Plaintiff and the Class Members were unaware of the omitted material facts when they purchased and/or leased the Affected Vehicles.  Plaintiff and the Class Members were justified because Volkswagen was in exclusive control of the material facts and there were no reasonable means for Plaintiff and the Class Members to discover them.

60.     As a result of Volkswagen's concealment and suppression of the facts, Plaintiff and the Class Members have suffered damages.  The Affected Vehicles have suffered diminution of value as a result of Volkswagen's failure to timely disclose the actual emissions qualities of the Affected Vehicles.  Also, Plaintiff and the Class Members paid a premium for Affected Vehicles that are incapable of performing as represented.  Plaintiff and the Class Members will

suffer additional damages when the Volkswagen initiates a recall to reduce the Affected

Vehicle's emission rates as required by the EPA, because such repairs will negatively affect the

Affected Vehicles' fuel mileage and/or performance characteristics, and value.

61.     Accordingly, Volkswagen is liable to Plaintiff and the Class Members for

damages in an amount to be proven at trial.  Additionally, Volkswagen's wrongful conduct

warrants an assessment of punitive damages to deter future wrongful conduct.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (Asserted on behalf of Nationwide Class)

62.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

63.     Volkswagen, through its product labels, packaging, advertisements, websites, and

other marketing materials, made uniform representations and offers regarding the quality of the

Affected Vehicles.  More specifically, Volkswagen represented that the "Clean Diesel" engines

of the Affected Vehicles were environmentally friendly and complied with all federal emissions

standards.

64.     Plaintiff and Class Members, by purchasing and/or leasing the Affected Vehicles,

accepted Volkswagen's offer and paid consideration by way of paying for the Affected Vehicles.

65.     Volkswagen, Plaintiff, and Class Members had the legal capacity to enter into

such contracts.

66.     Volkswagen breached the contracts by not upholding their end of the bargain,

namely by providing a vehicle that does not have the qualities it was represented to have.

67.     As a result of Volkswagen's breach, Plaintiff and the Class Members were

deprived of the benefit of the bargain and were damaged.

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

### (Asserted on behalf of Nationwide Class)

68.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

69.     In designing, importing, marketing, distributing, leasing and/or selling the Affected Vehicles, Volkswagen made express representations to Plaintiff and the Class Members that the Affected Vehicles contained a "Clean Diesel" engine that fully complied with federal emission standards.

70.     These representations were aimed at consumers, including Plaintiff and the Class Members, and Plaintiff and the Class Members purchased the Affected Vehicles based on the reasonable expectation that the Affected Vehicles contained a "Clean Diesel" engine that fully complied with federal emission standards.

71.     Because the Affected Vehicles do not contain the qualities Volkswagen represented them to contain, Volkswagen breached its express warranties, causing Plaintiff and the Class Members to be damaged.

72.     Accordingly, Plaintiff and Class Members are entitled to recover damages they suffered as a result of Volkswagen's actions.

## FOURTH CLAIM FOR RELIEF

### Breach of Federal Emissions Control System Defect Warranty

### (Asserted on Nationwide Class)

73.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

74.     Volkswagen warranted to each original purchaser or lessee of every Affected Vehicle that the Affected Vehicle was designed, built, and equipped so as to conform at the time of sale with all applicable regulations of the EPA.

75.     Volkswagen also warranted to each original purchaser or lessee of every Affected Vehicle that the Affected Vehicle was free from defects in material and workmanship which causes the vehicle to fail to conform with EPA regulations.

76.     Volkswagen breached its warranty by selling and leasing Affected Vehicles that it knew did not conform to applicable EPA regulations, causing Plaintiff and Class Members to suffer damages.

77.     Accordingly, Plaintiff and Class Members are entitled to recover damages they suffered as a result of Volkswagen's actions.

## FIFTH CLAIM FOR RELIEF

### Breach of Federal Emissions Performance Warranty

### (Asserted on Nationwide Class)

78.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

79.     Volkswagen warranted to each purchaser or lessee of every Affected Vehicle that if the Affected Vehicle fails to conform to the applicable emission inspection standards, Volkswagen will remedy any nonconformity free of charge.

80.     Volkswagen breached its warranty by selling and leasing Affected Vehicles which it knew did not conform with applicable EPA regulations, causing Plaintiff and Class Members to be damaged.

81.     Accordingly, Plaintiff and Class Members are entitled to recover damages they suffered as a result of Volkswagen's actions.

19

## SIXTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

### (Asserted on behalf of Nationwide Class)

82.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

83.     In designing, marketing, distributing, leasing and/or selling the Affected Vehicles, Volkswagen warranted that the Affected Vehicles satisfied the federal emissions laws.

84.     Volkswagen breached the warranty implied in the contract for the sale of the Affected Vehicles because the Affected Vehicles could not pass without objection in the trade under the label description, the goods were not of fair average quantity within the description, and the goods were unfit for their intended and ordinary purpose.  Accordingly, Plaintiff and the Class Members did not receive goods as impliedly warranted by Volkswagen to be merchantable.

85.     Plaintiff and the Class Members purchased the Affected Vehicles in reliance upon Volkswagen's skill and judgment and the implied warranties of fitness for their intended and ordinary purpose.

86.     The Affected Vehicles were not altered by the Plaintiff or the Class Members.

87.     The Affected Vehicles were defective when they left the exclusive control of Volkswagen.

88.     Volkswagen knew that the Affected Vehicles would be purchased and used without additional testing by Plaintiff and Class Members.

89.     The Affected Vehicles were defectively designed and unfit for their intended purpose, and Plaintiff and the Class Members did not receive the goods as warranted.

90.     As a direct and proximate cause of Volkswagen's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because (i) they would not have purchased the Affected Vehicles on the same terms if they had known the products' true nature; (ii) they paid a price premium for the Affected Vehicles based on Volkswagen's "Clean Diesel" representations; and (iii) the Affected Vehicles did not have the characteristics, uses, benefits, or quantities promised.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment / Common Law Claim For Restitution

### (Asserted on Behalf of Nationwide Class)

91.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

92.     Because of its wrongful acts and omissions, Volkswagen charged a higher price for the Affected Vehicles than the products' true value and Volkswagen obtained monies which rightfully belong to the Plaintiff and Class Members.

93.     Volkswagen enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and Class Members.  It would be inequitable and unjust for Volkswagen to retain these wrongfully obtained profits.

94.     Plaintiff, therefore, seeks an order requiring Volkswagen to make restitution to him and the Class Members.

## EIGHTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Asserted on Behalf of Nationwide Class)

95.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

96.     Volkswagen made representations to Plaintiff and the Class Members regarding the contents of the Affected Vehicles that were not true.

97.     Volkswagen had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiff and the Class Members would rely on these representations.

98.     Plaintiff reasonably relied on Volkswagen's representations and as a result Plaintiff and members of the Class were harmed.

## NINTH CLAIM FOR RELIEF

### Violation of Ohio Consumer Sales Practices Act

### (Asserted on Behalf of Ohio Subclass)

99.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

100.    The Ohio Consumer Sales Practices Act, O.R.C. § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  For example, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their products or goods are of a particular standard, quality, or grade they are not; that the products or goods have been supplied in accordance with a previous representation, if they have not; and that the transaction involves a warranty, rights, remedies, or obligations if that representation is false.  Volkswagen's actions as described throughout this Complaint violate each of these provisions.

101.    The Ohio Consumer Sales Practices Act, O.R.C. § 1345.03, also prohibits unconscionable acts or practices in connection with a consumer transaction which includes the circumstances at issue here where Volkswagen has knowingly taken advantage of the inability of

consumers to reasonably protect their interests because of the consumers' ignorance of actual nature of the Affected Vehicles.

102.    Each Defendant is a "supplier" as that term is defined in O.R.C. § 1345.01(C).

103.    Plaintiff and the members of the Ohio Subclass are "consumers" as that term is defined in O.R.C. § 1345.01(D).

104.    Volkswagen's conduct alleged above constitutes unfair, deceptive, and unconscionable acts and practices in connection with a consumer transaction in violation of O.R.C. § 1345.02 and § 1345.03.

105.    Volkswagen's conduct as alleged above constitutes an act or practice previously declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 and previously determined by Ohio courts to violate Ohio's Consumer Sales Practices Act and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05.  The applicable rule and Ohio court opinions include, but are not limited to:  OAC 109:4-3-16; *Mason v. Mercedes-Benz USA, LLC,* 2005 Ohio 4296; *Khouri v. Lewis,* Cuyahoga Common Pleas No. 342098 (2001); *State ex rel Montgomery v. Canterbury,* Franklin App. No. 98CVH054085 (2000); and *Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017, unreported (PIF # 10001874).

106.    Volkswagen's conduct caused damages to Plaintiff and the members of the Ohio Subclass as alleged.

107.    Accordingly, Plaintiff and the members of the Ohio Subclass are entitled to recover damages and attorneys' fees pursuant to O.R.C. § 1345.

## TENTH CLAIM FOR RELIEF

### Violation of Ohio Deceptive Trade Practices Act

**(Asserted on Behalf of Ohio Subclass)**

108.　Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

109.　Volkswagen's conduct as alleged herein violated Ohio's Deceptive Trade Practices Act.  More specifically, by representing during all relevant time periods that the Affected Vehicles contain benefits and qualities they do not contain, Volkswagen violated O.R.C. §§ 4165.02 (A)(1) ("[p]asses off goods or services as those of another"); 4165.02(A)(2) ("[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or service"); 4165.02(A)(7) ("[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"); 4165.02(A)(9) ("[r]epresents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"); and 4165.02(A)(11) ("[a]dvertises goods or services with intent not to sell them as advertised").

110.　Such representations, individually and collectively, were made by Volkswagen in the course of their business, and in violation of O.R.C. §4165.02, in that Volkswagen represented that the Affected Vehicles have characteristics benefits and qualities that they do not have.

111.　By making such representations, individually and collectively, Volkswagen willfully engaged in a deceptive trade practices listed in O.R.C. §4165.02, knowing them to be deceptive.

112.　Plaintiff and the Ohio Subclass have been injured as a direct and proximate result of Volkswagen' violation of O.R.C. § 4165.02, and were damaged in an amount that will be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class and Ohio Subclass, prays for judgment as follow:

    a.   Certification of the Class and Ohio Subclass under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and Ohio Subclass and his counsel as Class counsel;

    b.   Compensatory and other damages identified herein;

    c.   Awarding restitution and disgorgement of Volkswagen's revenues or profits to Plaintiff and the members of the proposed Class and Ohio Subclass as permitted by applicable law;

    d.   An Order requiring Volkswagen to cease and desist from engaging in wrongful conduct and to engage in a corrective advertising campaign;

    e.   Statutory pre-judgment and post-judgment interest on any amounts;

    f.   Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

    g.   Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert B. Sherwood (0084363)
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio  45202

Phone:  (513) 345-8291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

Christian A. Jenkins (0070674)
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, Ohio  45208
Phone:  (513) 723-1600
Fax:  (513) 723-1620
cjenkins@minnillojenkins.com